404 So.2d 309 (1981)
Donald S. GRENEAUX, Plaintiff-Appellee,
v.
CASTLE I, INC., Defendant-Appellant.
No. 8352.
Court of Appeal of Louisiana, Third Circuit.
September 11, 1981.
*310 Mildred Allison Black, Lafayette, for defendant-appellant.
Mouton, Roy, Carmouche, Bivens & Kraft, Kenneth M. Henke, Lafayette, for plaintiff-appellee.
Before FORET, SWIFT and DOUCET, JJ.
SWIFT, Judge.
On February 27, 1978, Donald S. Greneaux, plaintiff, contracted with Castle I, Inc., defendant, for the latter to construct a house on Greneaux's lot which is located on a hill in St. Landry Parish. The contract price was $27,555.00. Construction began in early April, 1978, and the house was substantially completed the following month.
Shortly after construction began the house was found to be unlevel, apparently because the pier supports of its left front corner were sinking in the ground. The contractor attempted on three occasions to correct the problem by jacking up and leveling the house, but was not completely successful. Thereafter, portions of the walls and floors buckled. Also, for some undetermined reason a pipe to the bathroom lavatory burst and remained unchecked, causing extensive water damage to the interior of the house.
Greneaux filed suit against Castle I alleging that the house contained defects which were due to the defendant's bad workmanship. The plaintiff prayed for the cost of repairs, or alternatively, for a rescission of the contract plus damages.
Castle I denied plaintiff's allegations and reconvened for recognition of its lien and for the unpaid balance due under the construction contract.
An expert in the field of building construction and home repair was appointed by the court to examine the house and determine the extent of the water damage. He reported that a 26 × 32 feet area of the floor had sustained such damage and to correct same would cost $2,990.00.
After trial the judge found that the house was actually unlevel and this condition was caused by the fault of the defendant-contractor. He concluded the owner was entitled to recover $15,840.00, the amount of plaintiff's expert's estimate of the cost of repairs. However, the judge attributed the water damage to the plaintiff's failure to minimize his damages by timely removing the water from the house and he credited defendant with the cost to repair this and also with the unpaid balance of the contract. Judgment was finally rendered for $9,795.00. The defendant has appealed this award. Plaintiff has neither appealed nor answered the appeal.
Defendant-appellant first asserts that the trial court erred by failing to find that a latent defect existed in the soil, a condition for which the landowner is responsible under the laws and jurisprudence.
Louisiana Civil Code Article 2762 provides:
"If a building, which an architect or other workman has undertaken to make by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall bear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building, and of five years if it be built in wood or with frames filled with bricks."
*311 Although defects in the soil are not mentioned therein, the jurisprudence has extended Article 2762 to hold the builder responsible for certain defects of this nature. In Wurst v. Pruyn, 250 La. 1109, 202 So.2d 268 (1967), our supreme court stated:
"While undertakers and architects under Article 2762 are held harmless for `defects in the soil', it is latent defects in the soil which are meant. Hence a different result would obtain if the soil defect was apparent to the undertaker. And it could not be otherwise, unless a contractual stipulation governed the question. For the requirements of public order and the obligation implicit in every contract that the work will be done in a good and workmanlike manner would compel us to reject a contention that an undertaker is not responsible for building upon a site which he knows to be defective. In such a case, the barest standards of care would require him to bring the defect to the attention of the owner before proceeding. The owner would then have an opportunity to make the indicated adjustment in the contract to provide against the defective soil condition of which he had no prior knowledge. Matthews v. Rudy, 4 La.App. 226 (1926).
"Not only do we think Article 2762 imposes liability upon an undertaker who builds upon a site he knows to be defective, but we are also of the opinion he is liable for the loss resulting from a structure falling into ruin when he should have known by the exercise of proper judgment that a condition at the site, other than a latent defect in the soil, should be corrected before proceeding with the work, and he fails to advise the owner in time to permit an adjustment. This is an obligation of the undertaker which seems plain to us. Draube v. Rieth, 114 So.2d 879 (La.App.1959). For the contractor has expert knowledge of such things, or should have, and he must bring these things to the attention of the owners, who have no knowledge of such affairs. See Jung v. Gwin, 174 La. 111, 139 So. 774 (1932)."
See also, Unverzagt v. Young Builders, 207 So.2d 405 (La.App. 3 Cir. 1967), affirmed 252 La. 1091, 215 So.2d 823 (1968); and Kuhlman v. Talley, 145 So.2d 101 (La.App. 3 Cir. 1962).
We are in complete accord with the trial judge's factual conclusion that the house is unlevel. The preponderance of the testimony, expert and lay, indicates that despite three attempts to relevel the house its left front corner remains lower than the others.
The evidence also reflects, and both parties seem to concede in their briefs, that the soil caused the house to sink, which then caused the defects in the house. The principal issue then is whether the soil condition was a latent defect, in which case the plaintiff-landowner must bear the responsibility, or whether it was apparent, whereby the defendant-contractor is responsible.
No soil boring tests were conducted on the property prior to construction, because, according to defendant, the house was not constructed near a river, in or near a swamp, over a fill or in such an area which normally requires that support pilings be driven. The contractor contends that it had no reason to suspect that the character of the soil possessed an insufficient weight bearing capacity for the proposed structure as the land has a natural slope and appears to be well-drained.
The plaintiff testified that he first perceived the house was unlevel on the third or fourth day after the construction began. He said he tried to convince the builder of this, but latter disagreed. Plaintiff contends that the uneven floors then caused the walls to be uneven as they were being built. The builder subsequently did check the house, however, and finding it unlevel on three occasions jacked it up and attempted to stabilize at least one of its pier supports and bring about a level condition.
Lennis Belaire, the main carpenter who worked on the house, testified that Greneaux first complained of its unevenness after the roof was on. When Belaire jacked up the house, the piece of lumber on which the jack was sitting went into the ground. He testified, "That ground just sunk on me."
*312 Cecil D. Trahan, a defense expert witness, testified that contractors generally do not take soil borings of lots on which small houses are to be built. However, if during the course of construction the foundation begins to sink, this "would be a good clue" of a soil defect. When he anticipates there is going to be a foundation problem the owner is informed.
While a builder is not obliged in every instance to test the soil before construction begins, we are convinced that in this case the defendant should have known and informed the plaintiff the soil would not support his house earlier than it did. As heretofore mentioned, the record reflects that the house was unlevel certainly as early as when the walls were being built, apparently because the house was sinking. The defendant should have known then that something was wrong with the soil and should have notified the plaintiff-landowner so that proper adjustments could have been made. Because of its failure to do so, defendant is liable to plaintiff for the cost of remedying the defects in the house. Wurst v. Pruyn, supra.
Appellant suggests that since the plaintiff owned the lot for several years prior to commencement of construction, he is therefore charged with knowledge of its characteristics. We cannot agree. The contractor is considered as having expert knowledge of such things and is obliged to bring them to the attention of the owner who has no knowledge of such affairs. Wetmore v. Blueridge, Inc., 391 So.2d 951 (La.App. 4 Cir. 1980).
It is clear that the burst water pipe did not cause the house to sink initially. The unlevel condition and the defects in the house appeared before the pipe was ruptured and the flooding took place.
Lastly, defendant complains of the trial court's reliance upon the highly speculative estimate of repairs of plaintiff's expert which it contends was not substantiated by the evidence. Although this witness did not present much detailed information to support his final conclusion, the trial judge apparently was impressed by his testimony. The defendant did not offer any counter estimates. We are unable to say that the trial court abused its much discretion in making this award and we will not disturb it.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.