596 So.2d 854 (1992)
Daryl PARKER and Wife, Patricia L. Parker
v.
Dion THORNTON, Sr.
No. 07-CA-59587.
Supreme Court of Mississippi.
March 11, 1992.
*855 Michael P. Younger, Brandon, for appellant.
Anselm J. McLaurin, McLaurin & McLaurin, Brandon, for appellee.
Before HAWKINS, P.J., and SULLIVAN and McRAE, JJ.
SULLIVAN, Justice, for the Court:
This case arises from a suit in Rankin County Circuit Court by a husband and wife against a contractor. After experiencing problems with their home, the husband and wife filed their suit alleging negligence and breach of express and implied warranties of merchantability and fitness by the contractor. The husband and wife claimed that the contractor failed to properly prepare the site before pouring the foundation. The contractor argued that problems in the house were a result of Yazoo clay under the foundation. The jury returned a verdict for the contractor. The husband and wife appealed, assigning a number of errors. Of the assignments, only the challenge to the sufficiency of the evidence is taken up, as it is dispositive of the case. On that assignment the verdict is reversed and the case remanded for new trial.

THE FACTS
In August of 1985, Daryl and Patricia Parker purchased a new home from Dion Thornton, Sr. Thornton initially purchased Lots 20 and 25 on Sandway Drive and built homes for himself and his friend, Dave Odom. The house on Lot 20 was custom built for Odom. Once the houses were almost complete, the men decided that they did not want them and decided to buy two more lots elsewhere and build there. The houses on Lots 20 and 25 were put up for sale. Daryl and Patricia Parker signed a contract to purchase the house on Lot 20 from Thornton for $90,000.00. Before buying the Parkers specifically asked about the foundation as they had experienced foundation problems in their previous home on the Coast and had been told by others of the problems with Yazoo clay. Thornton told them that the house had a "beefed up foundation" and that he had personally watched the lot being cleared and prepared for the foundation.
*856 Despite Thornton's assurances, the Parkers began to experience problems some four or five months after moving in. Cracks formed across the driveway, in the fireplace, across the vaulted ceiling, and on a wall outside of the bedroom; the French doors jammed; and the door to the master bedroom would not close. Daryl Parker spoke to Thornton about the problems but repairs were never completed. Parker then had five foundation specialists take a look at his home with each giving him estimates on repairs. Parker then took his problem and his estimates to an attorney, who wrote Thornton a letter, dated July 17, 1986, with the lowest estimate attached.
In response to the letter, Thornton got his own foundation specialist, Gene Boling, to take a look at the house. Boling noted that the garage floor and the north wall had cracked and there had been some slight settling, and estimated that the repair work to fix the problems he saw would cost $900.00. The Parkers were leery of the $900.00 estimate because it was so much lower than all of the other estimates.
The Parkers then had the repair work done by L.V. Thrasher. As Thrasher dug holes under the slab, he discovered pine straw, leaves, and roots. In one hole dug by Thrasher, a stump could be seen protruding up into the foundation. Daryl videotaped what was discovered and said that the foundation was weakened by the debris beneath it.
On June 30, 1987, Daryl and Patricia Parker filed a complaint in Rankin County Circuit Court against Dion Thornton, Sr., alleging that Thornton breached express and implied warranties of fitness and habitability in his failure to cure "structural defects," and that he was negligent in his construction of the home. The Parkers requested $57,900.00 in actual damages and $25,000.00 in punitive damages. The Parkers later amended their complaint to request $200,000.00 in actual damages, because it was discovered that further repairs were needed on the house and these repairs would cause a further diminution in value.
At trial the primary concern was the cause of the foundation problem. Thornton testified that he sub-contracted the preparation of the lot to Jake Meadows. Thornton saw some of the preparation of the lot, and personally supervised the laying of the foundation. In reference to the stump that was found under the house, Thornton, after viewing the videotape, said that Meadows did not do a thorough job and neglected to do the job properly, as he left a stump. Though Thornton could not explain the videotape of roots and what appeared to be black decaying material beneath the slab, he felt that the source of the foundation problems stemmed from a concentration of Yazoo clay under the house. Thornton, however, did not mention anything to the Parkers about a concentration of Yazoo clay under the foundation when he was selling the house.
L.V. Thrasher indicated that he had dealt with Yazoo clay before and that he recognized it when he saw it. Thrasher was of the opinion that there was no massive amount of Yazoo clay under the Parker house. He believed that the problems experienced by the house were the result of the debris, roots, and stumps left under the slab and not Yazoo clay. When asked about creep in regards to Yazoo clay, Thrasher disputed that movement indicated by cracks and openings was the result of the house sitting on Yazoo clay. Thrasher felt that the cracks and openings were the result of sinking and not creeping.
It should be noted that after $6,500.00 worth of repairs were done, cracks began forming in the vaulted ceiling, the moldings around the fireplace were cracking and coming loose, baseboards popped loose, the masonite front pulled apart, boards on the front porch popped loose and dropped down, and the sheetrock under one of the windows separated. A sink was discovered in the floor of the den.
Alva Rutledge was called as an expert witness. Rutledge, a civil engineer and home inspector, was offered as an expert in the field of home inspection. Rutledge testified that he inspected the Parker home on May 5, 1988. In inspecting the home at the request of counsel for Thornton, he saw relatively little damage to the house, and *857 some minor cracking. The cracks and openings were not significant from a structural point of view, but were indications of movement. Rutledge attributed the cracking the house was experiencing was due to the Yazoo clay under the house.
Rutledge did not agree that the debris beneath the foundation caused the movement in the house. The roots found under the house were very solid and showed no signs of decay and had not affected the house. As for the roots that appeared to be sticking out of the concrete, Rutledge thought these were no problem. Rutledge stated that any problem caused by the roots would be insignificant to problems caused by the expansive clay under the house.
After all of the testimony was heard the case was given to the jury. The jury returned a verdict in favor of Thornton.

DISCUSSION
The Parkers claim that Thornton breached his express and implied warranties of fitness and merchantability and was negligent in his construction of the house. They allege that there were major structural defects in the foundation, walls, joints and roof; and that Thornton's negligence in constructing the house was the cause of the structural defects.
Thornton acknowledges that between a builder-vendor of a new home and his vendee there is an implied warranty that the home was built in a workmanlike manner and it is suitable for habitation. Hicks v. Greenville Lumber Co., Inc., 387 So.2d 94, 96 (Miss. 1980), quoting Brown v. Elton Chalk, Inc., 358 So.2d 721, 722 (Miss. 1978); Compare, Keyes v. Guy Bailey Homes, Inc., 439 So.2d 670, 673 (Miss. 1983) (extended the implied warranty to subsequent purchasers). Accompanying this contractual obligation is a common law duty to perform with care, skill and reasonable experience, and a negligent failure to observe any of these is a tort as well as a breach of contract. George B. Gilmore Co. v. Garrett, 582 So.2d 387, 391 (Miss. 1991), quoting Davis v. Anderson, 501 S.W.2d 459, 462 (Tex.Civ.App. 1973).
The Parkers challenge the sufficiency of the evidence to support the jury's verdict that Thornton did not breach the implied warranty. Our scope of review to challenges to the sufficiency of the evidence to support the verdict of a jury is quite limited. The evidence must be considered in the light most favorable to the winning party, Thornton, giving him the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the party on the losing side of the verdict, the Parkers, that reasonable persons could not have arrived at a contrary verdict, this Court is required to reverse and render. On the other hand, if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached a different conclusion, affirmance is required. Wilmoth v. Peaster Tractor Co. of Lexington, Inc., 544 So.2d 1384, 1386 (Miss. 1989); Fitzner Pontiac-Buick-Cadillac v. Smith, 523 So.2d 324, 326 (Miss. 1988).
The primary issue in this case is Thornton's preparation of the site for the foundation. Witnesses testified at trial that in preparing a site for a foundation, the top three or four inches of topsoil, which is mostly decaying matter, is removed along with all trees, roots and shrubs to get down to solid material. The evidence in this case, viewed in a light most favorable to Thornton, shows that he sub-contracted the preparation of the lot for the foundation. The sub-contractor removed the existing trees on the lot and scraped off three or four inches of topsoil. Some roots and debris were left on the foundation site. Aside from the roots, in one corner of the foundation a stump was left. Thornton testified that it was not the normal practice to dig below the surface to remove roots, as that would disrupt the soil. There was testimony that the foundation site was properly prepared and that it passed inspection by the city.
The Parkers experienced problems with the house, such as cracks in the masonary, *858 the walls, the ceilings, the garage, and a door that jammed. Rutledge stated that there was really no damage to the house and the cracks were minor. Rutledge did not believe that the house required any foundation repair. In fact, when the foundation was repaired, it was only raised some two and a half inches.
The jury was convinced from this evidence that Thornton had not breached his express or implied warranties or that he was negligent in his construction of the house. We give great weight and deference to juries on findings of fact and will not set aside a verdict unless it is against the overwhelming weight of the evidence and credible testimony. Roberts v. State Farm Mutual Automobile Insurance Company, 567 So.2d 1193, 1196 (Miss. 1990); Adams v. Green, 474 So.2d 577, 581 (Miss. 1985).
However, with all due deference to the findings of the jury, it is clear from the evidence that Thornton failed to construct the house in a workmanlike manner and that the verdict of the jury is against the overwhelming weight of the evidence. There is substantial evidence of roots, other debris, and a tree stump underneath the house. The videotape of Thrasher digging underneath the foundation of the house clearly shows a substantial number of roots and a stump beneath the foundation. Though taking issue with the roots, Thornton could not explain the indication of decaying material underneath the foundation. In regard to the stump, Thornton stated that his sub-contractor neglected to do the job properly and admitted that the stump should not have been left under the house. The debris, roots, and the stump beneath the foundation clearly indicate a failure by Thornton to prepare the foundation site with care, or in a workmanlike manner.
Additionally, there is the matter of Thornton pointing to the presence of Yazoo clay as the real source of the troubles with the foundation and not the stump and the roots underneath the foundation. The jury seemed to have accepted Yazoo clay as the cause of the problems in the house and thought that this cleared Thornton of fault. However, we have stated that when a contractor knows or should know of a defect in the subsoil, he does not perform his obligations in a workmanlike manner if he fails to notify the owner of the condition. George B. Gilmore Co. v. Garrett, 582 So.2d at 393; See, Annotation, Contractor's Duty to Warn of Soil Defects, 73 A.L.R.3d 1213, 1215 (1976).
Thornton's defense rested upon the idea that Yazoo clay existed underneath the house. He offered expert testimony that the foundation problems were due primarily to the presence of Yazoo clay. There was also the testimony of an experienced contractor from the area who stated that Yazoo clay was a real problem in the area, indicating that Thornton should have known of possible problems with Yazoo clay. The Parkers specifically inquired about the foundation out of their concern with having problems with Yazoo clay. This created a duty to notify the Parkers, but Thornton gave them no notice or warnings of possible problems with Yazoo clay and allegedly only told them that he had "beefed up the foundation." The failure to give notice was a failure to meet his obligations in a workmanlike manner and a breach of the implied warranties of fitness and habitability. See, Gilmore, 582 So.2d at 393.
In view of the foregoing, the verdict of the jury is set aside and this case is remanded for a new trial
REVERSED AND REMANDED FOR A NEW TRIAL.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, PITTMAN, BANKS and McRAE, JJ., concur.
DAN M. LEE, P.J., concurs in part and dissents in part without written opinion.