## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 96-CT-01387-SCT

*CAROL FAITH PIKE, EXECUTRIX OF THE ESTATE OF B. L. STRONG, DECEASED*

*v.*

*HOWELL BUILDING SUPPLY, INC., HOWELL CONSTRUCTION COMPANY, INC. AND UNITED STATES FIDELITY & GUARANTY COMPANY*

### <u>ON WRIT OF CERTIORARI</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 08/30/96 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PATRICK MALONE RAND |
| | ROBERT B. OGLETREE |
| ATTORNEY FOR APPELLEES: | ROBERT BROOKS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED-10/07/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/28/99 |

## EN BANC.

## MILLS, JUSTICE, FOR THE COURT:

¶1. In her complaint, plaintiff alleged both breach of contract and simple and gross negligence in the construction of a convenience store. At trial, defendants were allowed an "assumption of the risk" instruction, in effect precluding recovery. The jury found in favor of the defendants, and judgment was entered accordingly. The Court of Appeals reversed and remanded, finding the instruction to be improper, but also finding that all of the factors of assumption of risk should be set out on re-trial. This was error. Furthermore, the facts presented established that there was insufficient proof of negligence or breach of contract to submit to a jury in this case, and a directed verdict should have been granted for the defendants. Therefore, we reverse the judgment of the Court of Appeals with the result that the judgment of the Leake County Circuit Court is reinstated and affirmed.

### FACTS

¶2. On May 13, 1987, Doris Strong entered into a construction contract with Howell Building Supply, Inc. and Howell Construction Company, Inc. This contract provided for the construction of a convenience store on Highway 35 North in Leake County, Mississippi. The convenience store was to have gas tanks and pumps. Construction and installation of these items were contracted separately by Doris Strong with Winstead Petroleum Equipment Company. Howell subcontracted the pouring of the concrete for the store to George "Bud" Burnside.

¶3. When the time came to pour the concrete directly above the gas tanks, Burnside expressed concern

about how the tanks had been installed. His opinion was the dirt placed around the tanks was not of the right type to be sufficiently compacted to provide adequate support for the concrete on top. He expressed his concerns to Doris Strong and her husband B.L. Strong, as well as Clark Howell, owner of Howell Building Supply, Inc. and Howell Construction Company, Inc. B.L. Strong then asked Burnside if extra steel in the concrete would make any difference. Burnside responded in front of Doris Strong that adding extra steel would not hurt but in the end the concrete would still not hold up.[1] Howell was aware of the problem and B.L.'s suggestion of extra steel.

¶4. Burnside went ahead and added the extra steel and poured the concrete, apparently with Howell's knowledge. However, as predicted, over time the concrete gave way causing a gas line to rupture. As a result, Doris Strong brought suit in the Leake County Circuit Court against Howell Building Supply, Inc., Howell Construction Company, Inc., United States Fidelity and Guaranty Company, and Winstead Petroleum Equipment Company.[2] Doris Strong eventually assigned her interest in this case to the Estate of B.L. Strong. After deliberations, the jury returned a verdict for the defendants, and judgment was entered accordingly. On appeal, Doris maintains that the following instruction submitted by the defendants improperly instructed the jury regarding the assumption of risk defense:

> If you find from a preponderance of the evidence in this case that Doris Strong, before the pouring and finishing the concrete, was informed of the fact that the underground fuel tanks had been improperly compacted and, that she chose to have the concrete poured and finished anyway, then Doris Strong assumed the risk of damage and Plaintiff cannot recover from the Defendants, Howell Building Supply, Inc., Howell Construction Company, Inc., for any damages resulting therefrom.

## ANALYSIS

¶5. The use of the language "assumed the risk" in this instruction was a poor choice of words, leading the trial court and the Court of Appeals through an incorrect application of the law of assumption of risk. The assumption of risk defense applies to personal injury tort actions. While the appellant did charge negligent construction, this is primarily a contract action, and assumption of risk is inapplicable to this case.

¶6. Quite simply, this case deals with notice and waiver. Regarding this issue, we have previously said that

> [A] contractor who knows, or should know of a defect in a particular subsoil does not perform his contractual obligations in a workmanlike manner if he fails to notify the owner of the existence of the condition.

> Annotation, *Duty of Contractor to Warn Owners of Defects in Subsurface Conditions,* 73 A.L.R.3rd 1213, 1215, (1976).

> "Mr. Lewis (the contractor) had a duty to volunteer information as to the contents of the fill and underlying soil." *Lewis v. Anchorage Asphalt Paving Co.*, 535 P.2d 1188, 1198 (Alaska 1975); *Rippy v. Phipps*, 475 P.2d 646 (Colo.App.1970); *Wurst v. Pruyn*, 250 La. 1109, 202 So.2d 268 (1967); *Greneaux v. Castle I, Inc*., 404 So.2d 309 (La.App.1981) ("For the contractor has expert knowledge of such things, or should have, and he must bring these things to the attention of the owners, who have no knowledge of such affairs." 404 So.2d at 311) (quoting *Wurst v. Pruyn, supra*; *Luxurious Swimming Pools, Inc. v. Tepe*, 177 Ind.App. 384, 379 N.E.2d 992, 996 (1978) ; *Dixon v. Ledbetter,* 262 Ark. 758, 561 S.W.2d 294 (1978).

***George B. Gilmore Co. v. Garrett***, 582 So.2d 387, 393 (Miss. 1995).

¶7. We have also found that

> In 17 *C.J.S., Contracts*, § 491, p. 992, it is said "A party to a contract may waive provisions for his benefit; and likewise there may be a waiver of conditions precedent or severable stipulations." See also *Moore v. Yazoo & M.V.R. Co.*, 176 Miss. 65, 166 So. 395; *Tower Underwriters, Inc., v. Culley,* 211 Miss. 788, 53 So.2d 94; *Oden Construction Co. v. Helton*, 218 Miss. 41, 65 So.2d 442; 12 *Am.Jur*. pg. 918, Sec. 354. A waiver may be inferred from the actions and conduct of the parties. Waiver usually results when there is an intentional relinquishment of a known right. 17 *C.J.S., Contracts*, § 492, p. 995. . . .

***Mariani v. Hennington***, 229 Miss. 212, 226, 90 So.2d 356, 362 (1956).

¶8. In this case, a directed verdict for the contractor would have been appropriate under this notice and waiver analysis. As previously pointed out in ***George B. Gilmore Co.***, *supra,* this Court held that a contractor has a duty to warn as to the content of the fill and underlying soil. In the case *sub judice,* it is clear that the contractor, via its subcontractor, warned the owners of the unstable soil fill around the gas tanks, and that the concrete would not be adequately supported. The duty to notify the owners was fulfilled. Thereafter, the actions of the Appellants in instructing the contractor to proceed constituted a waiver of any defect in the pouring of the concrete caused by the insufficient fill and compaction of the underlying soil. Judge McMillin, writing the Court of Appeals dissent in this case, aptly addressed this premise as follows:

> . . . In this case, we have an issue of an act by the contractor that, in itself, is neutral in terms of negligence. Pouring concrete over poorly compacted soil, knowing that the concrete will not last as long as it would if the underlying soil were better compacted, is not, in itself, a negligent act. It may be a poor decision from a business standpoint if one hopes to enjoy the use of the poured concrete for an extended period of time, but that does not necessarily make the act negligent.
>
> In the same context, an owner's decision, in the midst of a construction project, to forego the added expense of further soil compaction efforts and merely hope that adding steel reinforcement to the overlying concrete will provide the usability the owner desires -- even in the face of informed opinion that this is not the likely result -- does not invoke considerations of competing negligence that is a necessary consideration in a comparative negligence case.

¶9. The case went to the jury. The jury found for the contractor. Even if the instruction which "caused" the Court of Appeals to reverse was not proper, it was not reversible error. In ***Wallace v. J.C. Penney Co.,*** 236 Miss. 367, 109 So. 2d 876 (1959), this Court found that an assumption of risk instruction was error because it eliminated any distinction between assumption of risk and contributory negligence. This Court affirmed despite the error because "[N]o judgment shall be reversed on the ground of misdirection to the jury ... unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice." 236 Miss. at 373, 109 So. 2d at 878 (quoting Miss. Sup. Ct. R. 11). As the Court explained, "[E]rror in instructions is not prejudicial as against an unsuccessful plaintiff who has no cause of action, who is not entitled to recover in any event, or who fails in his evidence to support the cause of action. . . ." 236 Miss. at 373, 109 So. 2d at 878 (quoting 3 Am. Jur. Appeal & Error § 1112). *See also* M.R.C.P. 61.

¶10. In the instant case, the jury's verdict is not a miscarriage of justice. As also pointed out by Judge McMillin in his dissent, what else could the subcontractor, and hence the contractor, do? The owner was told - the duty was satisfied - and the owner chose to proceed. The owner failed to prove that the contract was wilfully breached and failed to show that the contractor was negligent or grossly negligent.

¶11. For these reasons, we reverse the judgment of the Court of Appeals with the result that the judgment of the Leake County Circuit Court is reinstated and affirmed.

¶12. **REVERSED.**

> **PRATHER, C.J., PITTMAN, P.J., SMITH, WALLER AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. BANKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

> **McRAE, JUSTICE, DISSENTING:**

¶13. Because the trial court erred in giving the jury an instruction on assumption of the risk, this case should be reversed and remanded for a new trial. The majority opines that while the instruction may have been given in error, it matters not because the trial court should have granted a directed verdict to the defendants because "there was insufficient proof of negligence or breach of contract" in this case. This issue was not raised and is not properly before us. A careful examination of the testimony, however, demonstrates that the majority is wrong; there was sufficient evidence to make out a jury instruction on the issues of negligence and breach of contract. store. Most of the work was contracted to Howell Building Supply, Inc. and Howell Construction Co., Inc. The installation of the gas tanks and pumps was handled by another contractor, but the contract with Howell specified that it was Howell's duty to pour and finish the concrete around the store. Clark Howell sub-contracted the concrete job to Bud Burnside. Clark testified that when Burnside became concerned that the soil above the gasoline tanks was not properly compacted, Burnside informed B.L. ("Bill") Strong and Howell of the problem, and Bill Strong stated that they would just add extra steel. Howell was not positive that Doris Strong was involved in this discussion.

¶14. Howell was asked whether Doris Strong indicated that they were to pour the concrete in spite of the problem with the soil.

> A. No, sir. The indication was that maybe we could add some steel to what he already had there. We had bar mesh. Add some steel, and Bud testified a few minutes ago about putting steel in, and we added 35 bars of steel.

> Q. I will ask you whether or not you led Doris Strong to believe that putting this steel in there would cure the problem?

> A. No, sir. We didn't know it would cure the problem, because, really, it needed to have been compacted a little better. **We felt like this might help**.

¶15. At Howell's deposition, however, when asked whether Burnside had informed the Strongs of the problem with the soil, Howell responded "I don't know." Howell testified that he did not know why he

testified thusly at his deposition.

¶16. John Fair was hired to clean up the site after the concrete fall and caused the gas line to rupture. He testified that the concrete did not contain any steel rebar only some wire reinforcement. In Fair's opinion, use of steel rebar would have prevented the concrete from cracking as it did.

¶17. Burnside testified that he informed the Strongs and Howell that there was a problem with the dirt. Mr. Strong asked whether reinforcing the steel with extra concrete would suffice. Burnside told him that it would not hurt but that he still thought it would not work. Burnside stated that the next day he poured the concrete because a fellow told him that "You are doing the concrete and I'm installing the tanks." Bill Strong ordered 35-40 bars of steel, and Burnside incorporated those into the job. It does not appear that Strong assumed anything or authorized the work to proceed without it being properly done.[(3)]

¶18. The trial court gave the jury an instruction that directed the jury to find for the defendants if Doris Strong was informed of the compaction problem and chose to have the concrete poured and finished anyway because, in doing so, Doris Strong assumed the risk of damage.

¶19. The use of the term "assumption of the risk" in the jury instruction was error. The assumption of the risk doctrine has been subsumed into that of comparative negligence. No longer will assumption of the risk operate as a complete bar to recovery. *See* *Churchill v. Pearl River Basin Dev. Dist.*, No. 96-CA-01384-SCT, 1999 WL 333433, at \*4 (Miss. May 27, 1999).

¶20. This Court has previously held that a contractor who knows of a defect in the soil has a duty to warn the owner of the problem. *Parker v. Thornton*, 596 So.2d 854, 858 (Miss. 1992); *George B. Gilmore Co. v. Garrett*, 582 So.2d 387, 393 (Miss. 1991).

¶21. In this case, the evidence that the owner, Doris Strong, was given a warning of the soil defect was not so overwhelming as to have required a directed verdict for the defendants. Howell was not positive that Doris Strong was notified by Burnside. Moreover, Howell's testimony that Bill Howell was warned by Burnside was impeached by Howell's deposition testimony when he stated that he did not know if Burnside had warned the Strongs. Furthermore, after the warning may or may not have been conveyed to Bill and/or Doris Strong, **the evidence does not demonstrate that Bill Strong ordered the concrete to have been poured despite the soil hazard**. At most, Bill Strong suggested the addition of steel, and both Howell and Burnside went along with this suggestion. Assuming that Howell and Burnside did not feel that steel was a sufficient remedy for the problem, it is unclear that either man informed Strong of this opinion. More importantly, it would seem from Burnside's testimony that he poured the concrete after having been directed to by neither Strong nor Howell but by the contractor responsible for installing the gasoline tanks. All in all, there was sufficient evidence to withstand a directed verdict for the defendants in this case.

¶22. Another reason I disagree with the majority's disposition in this case is the fact that this issue was not raised in the Court of Appeals or on a petition for certiorari. Nor did the defendants file a cross-appeal complaining that the trial court erred in failing to grant a directed verdict for the defendants. Because that issue was never raised, it is not properly before this Court. Therefore, the majority errs when it opines that the trial court should have granted a directed verdict for the defendants. *See, e.g., Board of Trustees v. Knox*, 688 So.2d 778, 782 n.1 (Miss. 1997) (declining to consider "points of error" raised by appellee who did not file cross appeal); *Reynolds v. State*, 585 So.2d 753 (Miss.1991) (refusing to address an allegation of error raised by the State regarding the appellant's sentence when no cross-appeal had been

filed); ***Beck Enterprises, Inc. v. Hester***, 512 So.2d 672, 678-79 (Miss. 1987) (Court will not consider issues not raised on direct appeal or on cross-appeal).

¶23. In view of the above, a new trial is required. Therefore, I dissent.

## SULLIVAN, P.J., JOINS THIS OPINION.

## BANKS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶24. I concur in the result reached by the majority. I do not agree, however, that Howell Building Supply, Inc., was entitled to a directed verdict. It is my view that the instruction in question, while inartfully worded, adequately put the question to the jury whether the Strongs had notice of the potential soil problem and elected to proceed. While the term "assumed the risk" was used rather than the language of notice and waiver, the effect on lay jurors is, in my view, the same.

¶25. As Justice McRae points out, the facts of notice and waiver are jury issues. While I would not direct a verdict, neither would I disturb the one reached by this jury.

1. B.L. Strong was not a party to the contract.

2. A "Suggestion of Bankruptcy" for Winstead Petroleum was properly filed with the trial court, leaving only the remaining defendants to the action.

3. BL. Strong died in May, 1992, and, thus, did not testify at the trial which was held four years after his death. The complaint was originally filed by Doris Strong in June, 1990. After her husband's death, Doris conveyed her interest in the property to the estate of B.L. Strong, the executrix of which was the Strongs' daughter, Carol Faith Strong Pike.