# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-02145-SCT

*STRIBLING INVESTMENTS, LLC*

*v.*

*MIKE ROZIER CONSTRUCTION COMPANY, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/05/2013 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MARK D. HERBERT |
| | BRADFORD COLEMAN RAY |
| ATTORNEYS FOR APPELLEE: | CHARLES G. COPELAND |
| | TIMOTHY JOHN STERLING |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 01/14/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     Stribling Investments, LLC, sued Mike Rozier Construction Company, Inc., alleging negligence and negligent construction. The trial court granted Mike Rozier Construction's Motion for Summary Judgment and dismissed Stribling Investments' Complaint on the ground that Mike Rozier Construction did not owe a duty to Stribling Investments. Stribling Investments appeals. Holding that the trial court should consider whether the builder-vendor rule applies to Mike Rozier Construction Company, we reverse.

## FACTS AND PROCEDURAL HISTORY

¶2.     In December 2005, D.G. Gluckstadt, LLC (a nonparty to the suit), bought property on Yandell Road in Gluckstadt, Mississippi, and entered into a lease with Dollar General.  Mike Rozier and his son formed D.G. Gluckstadt solely to buy property in Gluckstadt, build a Dollar General Store, and then sell the property and assign the Dollar General lease to a subsequent buyer.

¶3.     The lease between D.G. Gluckstadt, as Lessor, and Dollar General, as Lessee, provided D.G. Gluckstadt with Dollar General's standard plans to build a store and parking lot.  Specifically, the lease required D.G. Gluckstadt to

> [c]onstruct a building per the attached Lessee approved site plan (showing building ingress and egress) using the Lessee's Prototype Design Package (both documents attached hereto and made a part of the Lease).  Demised Premises to be complete, in compliance with all governing code authorities and ready for Lessee's immediate occupancy.  Dimensions of Demised Premises to be as listed.

The Dollar General prototype plans included grading and paving options for the heavy-duty section of the parking lot, but provided an exception in the event that a certified geotechnical report specified an alternate method of construction.

¶4.     D.G. Gluckstadt then sent a project budget to Dollar General to help determine the lease amount, calculating a $30,000 cost of building the parking lot.  The project budget also stated that an additional $30,000 would be used for "earthwork," including grading, excavating, filling, and degrassing the site.  D.G. Gluckstadt claims that it then hired Mike Rozier Construction Company, Inc. ("Rozier Construction"), to construct the building and the parking lot.  Mike Rozier also owns Rozier Construction.  No formal written agreement

existed between Rozier Construction and D.G. Gluckstadt. According to Mike Rozier, "I do not write contracts to myself."

¶5. Before construction, Ladner Testing Laboratories was hired to test the soil and recommend the best way to build the parking lot. Rozier Construction did not follow the construction recommendations from Ladner Laboratories, nor did it excavate the ground according to the project budget. Rozier Construction degrassed the area for the parking lot, installed between three and eight feet of fill, and laid a slab. Rozier Construction did not check the moisture level of the soil. It also did not utilize any steel rebarb or geotechnical fabric to stabilize the parking lot. Rozier Construction claims that it informed D.G. Gluckstadt of all of the above, and that D.G. Gluckstadt waived the duty of workmanlike construction. Rozier Construction states that D.G. Gluckstadt "made an informed economic decision" to construct a less-expensive parking lot than that recommended by Ladner Laboratories and Dollar General's prototype plan, all considered with "full knowledge and appreciation of the costs and benefits of the construction design and methods."

¶6. Other than Mike Rozier's depositions, the record does not contain any evidence that Rozier Construction communicated the means of construction to D.G. Gluckstadt, let alone that D. G. Gluckstadt approved those means. In fact, during his deposition, Rozier stated that he was not sure whether he had ever seen the 2005 Ladner Report. Further, as Rozier owned both companies, for Rozier Construction to present facts and options to D.G. Gluckstadt would mean that Mike Rozier presented them to *himself* (and, perhaps, his son.)

¶7. In 2006, at the end of construction, D.G. Gluckstadt sold the building and land to Stribling Investments, LLC, and assigned to it the Dollar General lease. Prior to purchase, Stribling procured an inspection performed by a licensed contractor that did not reveal any visual cracks or other issues in the parking lot. The contract between D.G. Gluckstadt and Stribling did not disclose the subsoil conditions. The land sale contract between D.G. Gluckstadt and Stribling contained an "as-is clause" that stated:

> It is understood and agreed that the property is being sold "as is"; that Buyer has, or will have prior to the Closing Date, Inspected the Property; and that neither Seller nor Agent makes any representation or warranty as to the physical condition or value of the Property or its suitability for Buyer's intended use.

After the lot began showing signs of deficiencies and deterioration and an April 2012 analysis and report from Ladner Testing Laboratories indicated poor construction, Stribling contacted Rozier Construction and made a demand for repairs. When Rozier Construction did not respond, Stribling filed suit against Rozier Construction in the Circuit Court of Madison County, alleging negligent design and negligent construction of the parking lot.

¶8. The trial judge granted summary judgment in favor of Rozier Construction. The trial judge found that "[t]he plaintiff has not shown any 'summary judgment' proof that the Defendant failed to construct the parking lot in question according to the specifications required according to its verbal contract with D.G." The instant appeal followed.

## ISSUE

4

¶9.     We address the issue of whether genuine issues of material fact exist and preclude summary judgment in favor of Rozier Construction.  Resolving this question requires us to address the following:

    I.       Whether D.G. Gluckstadt indeed waived the duty owed by Rozier Construction such that Stribling cannot invoke it.

    II.      Whether the sale contract's "as-is" clause bars Stribling's suit against Rozier Construction.

## STANDARD OF REVIEW

¶10.    The grant or denial of a summary judgment motion is reviewed *de novo*. ***Town Creek Master Water Mgmt. Dist. of Lee, Pontotoc, Prentiss, Union Ctys. v. Webb***, 93 So. 3d 20, 24 (¶ 9) (Miss. 2012). "[The] Court, as well as the trial court, considers *all* evidentiary matters before it – admissions in pleadings, answers to interrogatories, depositions, affidavits, etc." ***Rein v. Benchmark Constr. Co.***, 865 So. 2d 1134, 1142 (¶ 24) (Miss. 2004). The Court views the evidence in a light most favorable to the nonmoving party.  "The moving party has the burden to show no genuine issue of material fact exists." ***Cade v. Beard***, 130 So. 3d 77, 81 (¶ 11) (Miss. 2014).  The opposing party must then set forth specific facts to show a genuine issue for trial. ***Id.***  Summary judgment is proper if "there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." ***Rein***, 856 So. 2d at 1142 (¶ 25).

## ANALYSIS

¶11.    We reverse the grant of summary judgment because whether Rozier Construction and D.G. Gluckstadt had a builder-vendor relationship serves as an issue of material fact. If so,

D.G.Gluckstadt would be ineligible to "waive" Rozier Construction's duties to the first purchaser of the property. At the hearing on Rozier Construction's Motion for Summary Judgment, Stribling did not use the term "builder-vendor," but Stribling's main argument in opposition to the Motion was that Mike Rozier owned both companies and therefore could not give notice to himself of any defects, nor could he waive duties owed to himself when the purpose of the construction was for sale to another party.

¶12.   For years, Mississippi has embraced the duty of workmanlike construction for homes.

> The purchase of a home is quite frequently the most important and expensive investment that a family makes. Yet, most purchasers simply do not have the knowledge or expertise necessary to discover many defects. They must instead rely upon the honesty and expertise of the builder. Consequently, if the home is poorly constructed with latent defects, the purchaser may very well be subject to a major financial catastrophe against which he has no practical means of protecting himself.

*Keyes v. Guy Bailey Homes, Inc.*, 439 So. 2d 670, 671-72 (Miss. 1983).   In addition, contractors and construction companies have a duty to disclose defects in fills and subsoils upon which the construction is to take place, regardless of the commercial or residential nature of the construction. *Pike v. Howell*, 748 So. 2d 710, 712 (¶ 6) (Miss. 1999); *George B. Gilmore Co. v. Garrett*, 582 So. 2d 387, 393 (Miss. 1991).

¶13.   In *Pike*, the Court decided a case in which the owner of a gas station had alleged negligent construction of its concrete pad. The Court narrowed the issue on appeal, stating that "[q]uite simply, this case deals with notice and waiver." *Id.* at 712 (¶ 6). A contractor has a well-established duty to warn of defects in the subsoil, the Court stated, and Howell Building Supply had fulfilled that duty when it pointed out the problems to the owner. *Id.*

6

By contrast, a contractor "does not perform his contractual obligations in a workmanlike manner if he fails to notify the owner of the existence of the condition." *Id.* (internal citation removed.) The Court held that, by then choosing to go ahead with her plans after hearing of the subsoil defects, the owner had waived objection to the subsoil defects and any harm that potentially might result in the gas station's concrete pad. *Id.* at 713 (¶ 8).

¶14. Rozier Construction argues that it had an oral contract with D.G. Gluckstadt, the original owner of the property, to construct the parking lot and that D.G. Gluckstadt had approved the methods subsequently used for construction. Pointing to *Garrett*, Rozier Construction claims that the oral contract serves as the sole instrument that "creates the state of things which furnishes the occasion of the tort." *Garrett*, 582 So. 2d at 391 (quoting *Pinnix v. Toomey*, 87 S.E.2d 893, 897-98 (N.C. 1955)). Under its theory, D.G. Gluckstadt knew about the Dollar General prototype plan and about the Ladner recommendations but ultimately chose a different design. Because D.G. Gluckstadt had been notified about the condition of the subsoil and the range of options and costs available to construct a parking lot of varying degrees of sturdiness and longevity, and because D.G. Gluckstadt ultimately chose a "Chevrolet" instead of a "Cadillac," Rozier Construction argues that Stribling Investments cannot now claim more rights against Rozier Construction than D.G. Gluckstadt would have had.

¶15. At first blush, Rozier Construction's conclusions appear to be legally sound. Under *Pike*, D.G. Gluckstadt certainly would not have been able to succeed in a negligence suit against Rozier Construction after it had waived the condition of the subsoil.

> On numerous occasions this Court has said that in assignments of contracts between parties an assignee obtains no greater right in the thing assigned than was possessed by the assignor, but simply stands in the shoes of the latter and the assignee's rights can rise no higher than the assignors. *See Indiana Lumbermen's Mut. Ins. Co. v. Curtis Mathes Mfg. Co.*, 456 So. 2d 750 (Miss. 1984); *Smith v. Copiah County*, 232 Miss. 838, 100 So. 2d 614 (Miss. 1958); *Simmons v. Smith County Bank*, 225 Miss. 384, 83 So. 2d 441 (Miss. 1955); and *Canton Exchange Bank v. Yazoo County*, 144 Miss. 579, 109 So. 1 (Miss. 1926).

*Ford v. White*, 495 So. 2d 494, 497 (Miss. 1986). However, Rozier Construction's argument conceals one fatal flaw: When asked during his deposition if he would be able to produce the contract created between Rozier Construction and D.G. Gluckstadt, Mike Rozier responded, "I don't write contracts to myself." Therefore, other than Rozier Construction's claims of an oral contract, no evidence exists proving that Rozier Construction indeed warned D.G. Gluckstadt about the defects in the subsoil. Nor does any evidence exist within the record that D.G. Gluckstadt exercised a choice of a "Chevrolet" parking lot over a "Cadillac" parking lot.

¶16. In *Brown v. Elton Chalk, Inc.*, 358 So. 2d 721, 722 (Miss. 1978), the Court allowed a purchaser of a home to proceed with a claim of a builder-vendor's breach of the implied warranty of habitability. The rule required the party to "allege in his declaration, *inter alia*, that (1) the house is new; and (2) that the plaintiff was the first purchaser." *Id.* The Court had continued to hear cases in which a party has been accepted as a builder-vendor entity, but as of yet has not established a framework for determining what, exactly, constitutes a builder-vendor. *See Parker v. Thornton*, 596 So. 2d 854 (Miss. 1992); *Keyes v. Guy Bailey Homes, Inc.*, 439 So. 2d 670 (Miss. 1983).

8

¶17. Pennsylvania has stated that a builder-vendor is "one who buys land and builds homes upon that land for purposes of sale to the general public." *Elderkin v. Gaster*, 288 A.2d 771, 774 n.10 (Pa. 1972). In *Rogers v. Lewton*, 570 N.E.2d 133, 135 (Ind. Ct. App. 1991) (quoting *Callander v. Sheridan*, 546 N.E. 2d 850, 853 (Ind. App. 1989)), Indiana determined that "where a person undertakes the responsibility of a general contractor, he must also accept the attached liability of a builder-vendor to a subsequent buyer." The Supreme Court of Arizona reiterated in *Lofts at Fillmore Condominium Association v. Reliance Commercial Construction, Inc.*, 190 P. 3d 733, 736 (¶ 12) (Ariz. 2008), that the public policy behind implied warranties in the construction industry is "to protect innocent buyers and hold builders responsible for their work." Any other rule that arbitrarily would block an innocent buyer from relief would be "incomprehensible" and "might encourage sham first sales to insulate builders from liability." *Id.* at 736 (¶ 16) (quoting *Richards v. Powercraft Homes, Inc.*, 678 P.2d 427, 430 (Ariz. 1984)). The Arizona Supreme Court also noted that, as the market continues to evolve, the builder-vendor identification has been shifting "from the traditional builder-vendor model to arrangements under which a construction entity builds the homes and a sales entity markets them to the public. In some cases, the builder may be related to the vendor; in other cases, the builder and the vendor may be unrelated." *Id.* at 736 (¶ 17).

¶18. We take from *Lofts* the guiding principle that, in determining whether a party constitutes a builder-vendor, Mississippi's overarching policy is to vitiate sham transactions that would deny relief to the innocent purchaser of new construction. The builder-vendor

transactions may take the form of hollow sales of completed projects to strawmen, and then to the true first purchaser. They also may take the form of sister companies – one entity who owns the land, the other who improves the land – that work together to effectuate sham waivers of notices or implied warranties. Further, we remind plaintiffs that they must raise the builder-vendor issue early in litigation: They must allege in their declaration, at minimum, that (1) the construction is new; and (2) that the plaintiff was the first innocent purchaser after the completion of the allegedly negligent construction. *Brown*, 538 So. 2d at 722.

¶19. The majority of builder-vendor precedent in Mississippi and in other states centers on homebuilders, as homebuilders are responsible for implied warranties of fitness for habitability. The duty to disclose defects in subsoil and fill conditions, however, applies to all builders, regardless of whether their construction is for commercial or residential purposes. *See* *Pike*, 748 So. 2d at 712 (¶ 6). Whether the defendant is a builder-vendor for the purposes of determining the validity of the disclosure or subsequent waiver of those conditions "is a question of fact to be determined on a case-by-case basis." *Hoke v. Beck*, 587 N.E.2d 4, 7 (Ill. App. 3d 1992).

¶20. Regarding the instant case, we reverse the trial court's grant of summary judgment and remand for further proceedings. On remand, the trial court should consider whether the builder-vendor context applies to the relationship between Rozier Construction Company and D.G. Gluckstadt. A review of Stribling's complaint shows that it alleged that the parking lot was new, and that Stribling was the first purchaser, satisfying *Brown*, 358 So. 2d at 722.

Should the trial court find that the builder-vendor classification applies to Rozier Construction, its argument that it disclosed the defective subsoil conditions beneath the parking lot to D.G. Gluckstadt, and that D.G. Gluckstadt waived the use of particular improvements to combat the subsoil defects, must fail. However, if the trial court were to find the builder-vendor classification inapplicable to D.G. Gluckstadt, then the disclosure and waiver were effective and dismissal is appropriate.

¶21. Another issue exists regarding whether the "as-is" clause within the sales contract between D.G. Gluckstadt and Stribling bars any objection Stribling has to the condition of the land and parking lot. Notably, Stribling has sued only Rozier Construction, a nonparty to the sales contract, and not D.G. Gluckstadt. Mississippi does not have much caselaw on the force and effect of an "as-is" clause, but such a clause has been applied to constitute a transfer of property without any warranties. *See* ***Stonecipher v. Kornhaus***, 623 So. 2d 955, 963 (Miss. 1993) (holding that the "as-is" clause bars a negligent-misrepresentation suit as to the natural condition of the land); ***Beaumont Homes, LLC v. Colonial/Jordan Props., LLC***, 71 So. 3d 1238, 1240 (¶ 8) (Miss. Ct. App. 2011) ("[A]n 'as is' clause in a contract exempts a seller from liability pertaining to the condition of the property.")

¶22. Rozier Construction argues that the builder-vendor rule would merge it and D.G. Gluckstadt into a single entity, thereby allowing Rozier Construction to benefit from the "as-is" clause within the sales contract executed by D.G. Gluckstadt. While Mississippi requires a disclosure statement to accompany the sale of a domicile or house, "[t]ransfers of real property on which no dwelling is located" do not require disclosure statements to be provided

11

to the buyer. Miss. Code Ann. §§ 89-1-501(1), 89-1-501(2)(h) (Rev. 2011). However, should the trial court determine that Rozier Construction and D.G. Gluckstadt together form a builder-vendor entity, the affirmative duty to disclose defects within the subsoil to prospective buyers would still apply, regardless of an "as-is" clause. *See* ***Pike v. Howell Bldg. Supply Co., Inc.***, 748 So. 2d 710 (Miss. 1999). In the instant case, the Yazoo clay under the parking lot has caused its deterioration. The Court has made it clear that the problems presented by Yazoo dlay are known and should not be ignored. ***Garrett***, 582 So. 2d at 393-94 ("'As a general rule, the builder is responsible for defects caused by defects in the soil . . . .' Gilmore gave the Yateses no information as to yazoo clay, and made no allowance whatever in the foundation for yazoo clay just a few feet beneath the surface.") (quoting 17A C.J.S. *Contracts*, § 515(e), 857).

¶23. If the builder-vendor classification applies to Rozier Construction and D.G. Gluckstadt, then the first purchaser of the property is Stribling. The warranty of workmanlike construction applies to the sale of new construction to the first purchaser, and it requires the contractor to inform the owner – or under the builder-vendor classification, the first purchaser – "of a defect in a particular subsoil" if the contractor knows or should know of the defect. ***Pike***, 748 So. 2d at 712; ***Garrett***, 582 So. 2d at 393. An "as-is" clause may waive a warranty, but only *after* the satisfaction of the affirmative duty to disclose soil defects. Thus, should the factfinder, on remand, find that Rozier Construction and D.G. Gluckstadt have a builder-vendor relationship, the combined entity of Rozier Construction-D.G. Gluckstadt carried the affirmative duty to inform Stribling of the Yazoo clay below the

parking lot, as well as any other subsoil defects, *before* Stribling executed the sales contract containing the "as-is" clause.

¶24. To be clear, today we hand down a very fact-driven holding. First, an issue of material fact exists as to whether Rozier Construction and D.G. Gluckstadt have a builder-vendor relationship, rendering the trial court's grant of summary judgment inappropriate. Should they be deemed to have a builder-vendor relationship on remand, the analysis should disregard any "notice and waiver" of the existence of Yazoo clay and of construction options that would have accounted for that type of soil, and Stribling should be regarded as the first purchaser of the property from the builder-vendor entity Rozier Construction-D.G. Gluckstadt. With Stribling as the first purchaser, Rozier Construction-D.G. Gluckstadt would have been under a duty to disclose any soil defects to Stribling before the sales contract's execution. However, the trial court also may come to the alternative finding that Rozier Construction and D.G. Gluckstadt did *not* have a builder-vendor relationship, at which point Stribling would be bound by D.G. Gluckstadt's notice and waiver of the subsoil defects, as well as the mutual decision between D.G. Gluckstadt and Rozier Construction to build a substandard parking lot.

## CONCLUSION

¶25. We have long enforced the builder-vendor classification for our citizens' homes and see no reason to refuse similar protection to Mississippi's commercial class. Today, we give guidance to factfinders for their future consideration of whether entities possess a builder-vendor relationship, regardless of whether the property in question was residential or

13

commercial. We further hold that a builder-vendor's duty to disclose known defects survives an "as-is" clause in a sales contract, unless the buyer provides an informed waiver of claims with respect to the known defect. We therefore reverse the trial court's grant of summary judgment and remand the case for further proceedings consistent with the instant opinion.

¶26. **REVERSED AND REMANDED.**

**DICKINSON AND RANDOLPH, P.JJ., LAMAR AND PIERCE, JJ., CONCUR. KITCHENS, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.; DICKINSON AND RANDOLPH, P.JJ., JOIN IN PART. WALLER, C.J., AND MAXWELL, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, CONCURRING IN RESULT ONLY:**

¶27. The majority is correct in reversing the grant of summary judgment to Mike Rozier Construction Company, Inc. But I respectfully concur only in the Court's result.

¶28. This Court has held that, "as between the builder-vendor of a new home and his vendee there is an implied warranty that the home was built in a workmanlike manner and that it is suitable for habitation." ***Brown v. Elton Chalk, Inc.***, 358 So. 2d 721, 722 (Miss. 1978). As the majority recognizes, "[t]he rule required the party to 'allege in his declaration . . . that (1) the house is new; and (2) that the plaintiff was the first purchaser.'" Maj. Op. ¶16 (quoting ***Brown***, 358 So. 2d at 722). The majority adopts the rationale of the Arizona Supreme Court that, "in determining whether a party constitutes a builder-vendor, Mississippi's overarching policy is to vitiate sham transactions that would deny relief to the innocent purchaser of new construction." Maj. Op. ¶18 (citing ***Lofts at Fillmore Condo. Ass'n v. Reliance Commercial Constr., Inc.***, 190 P.3d 733, 736 (Ariz. 2008)).

14

¶29. The majority reverses the judgment and remands this case with the following instruction to the trial court:

> Should the trial court find that the builder-vendor classification applies to Rozier Construction, its argument that it disclosed the defective subsoil conditions beneath the parking lot to D.G. Gluckstadt, and that D.G. Gluckstadt waived the use of particular improvements to combat the subsoil defects, must fail. However, if the trial court were to find the builder-vendor classification inapplicable to D.G. Gluckstadt, then the disclosure and waiver were effective and dismissal is appropriate.

Maj. Op. ¶20. Further, according to the majority, "[o]n remand, the trial court should consider whether the builder-vendor context applies to the relationship between Rozier Construction Company and D.G. Gluckstadt." Maj. Op. ¶20. But the issue *sub judice* is not, as the majority finds, "whether Rozier Construction and D.G. Gluckstadt have a builder-vendor relationship." Maj. Op. ¶24. Under Mississippi law, the concept of builder-vendor is not a "relationship," but rather a classification. Thus, the issue is whether D.G. Gluckstadt's and Rozier's alleged relationship violates Mississippi's public policy against sham transactions that would deny relief to the innocent purchasers of new construction and, as such, whether the builder-vendor classification applies to impute D.G. Gluckstadt's duty to Rozier to construct in a workmanlike manner.

¶30. The common law builder-vendor rule protects innocent first purchasers of new construction. ***Brown***, 358 So. 2d at 722. This Court has extended the duty to construct a "home in a workmanlike manner and to construct a home which is suitable for habitation," to subsequent purchasers. ***Keyes v. Guy Bailey Homes, Inc.***, 439 So. 2d 670, 673 (Miss. 1983). And the majority today correctly extends the builder-vendor classification to

15

Mississippi's commercial class. Maj. Op. ¶19. In light of Mississippi's public policy interest, and in the spirit of *Keyes*, I would expand the rule further to impute the builder-vendor classification to entities contrived solely for the purpose of artifice.

¶31.　To assert that the builder-vendor classification applies to D.G. Gluckstadt and Rozier, Stribling must have alleged, which it did, (1) that the construction is new, and (2) that Stribling was a first or subsequent innocent purchaser after completion of the allegedly negligent construction. *See Brown*, 358 So. 2d at 722; *Keyes*, 439 So. 2d at 673. The trier of fact must then determine whether Rozier is a builder-vendor in light of its alleged status as an *alter ego* for D.G. Gluckstadt. *See Park v. Sohn*, 433 N.E. 2d 651, 655 (Ill. 1982) ("Courts have defined the builder-vendor as one who is engaged in the business of building, so that the sale is of a commercial nature, rather than a casual or personal one."); *Luana Sav. Bank v. Pro-Build Holdings, Inc.*, 856 N.W. 2d 892, 897 (Iowa 2014) (quoting *Elderkin v. Gaster*, 288 A.2d 771, 774 n.10 (Pa. 1972)) ("A builder-vendor . . . refers to one who buys land and builds homes upon that land for purposes of sale to the general public."); *Hoke v. Beck*, 587 N.E. 2d 4, 7 (Ill. 1992) ("Whether a defendant is a builder-vendor for the purpose of the warranty is a question of fact to be determined on a case-by-case basis."). If the trier of fact determines that the companies are, in essence, one and the same, the builder-vendor rule applies. Then, as between Rozier and Stribling, a duty of workmanlike construction exists, and Stribling may proceed with its claim that such duty was breached. *Brown*, 358 So. 2d at 722.

¶32. Because a genuine issue of material fact exists regarding whether the builder-vendor classification applies, I would find only that the trial court improperly granted summary judgment to Rozier. I therefore concur in result only.

**KING, J., JOINS THIS OPINION. DICKINSON AND RANDOLPH, P.JJ., JOIN THIS OPINION IN PART.**