524 So.2d 582 (1988)
EASTLINE CORPORATION
v.
MARION APARTMENTS, LTD. and Dwayne Sharp.
No. 58451.
Supreme Court of Mississippi.
May 4, 1988.
David L. Reynolds, Reynolds, Prewitt & Bradley, Jackson, for appellant.
David H. Nutt, David Nutt & Associates, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and SULLIVAN and GRIFFIN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Eastline Corporation filed its complaint in the Chancery Court of Rankin County, Mississippi, against Marion Apartments, Ltd. and Dwayne Sharp[1] claiming money due it under the terms of a construction contract. Evidence introduced at trial indicated that the contract provided for a specific procedure whereby additional or extra work would be approved by appellee prior to the performance of such work. Eastline's claim was based in part upon additional or extra work which it performed without following the approval procedure. For that reason, the chancellor refused to allow testimony concerning sums expended by Eastline on the additional/extra work. Eastline contended that the chancellor's action was error, and the chancellor granted Eastline's motion for interlocutory appeal to this Court for determination of admissibility of such testimony.
Since the chancellor excluded the evidence mentioned above, judgment could have been entered and the matter would be before us on direct appeal. The issue is the same, whether on direct appeal or interlocutory appeal, and was framed by the chancellor as follows:
Should the Plaintiff [appellant] be allowed to adduce testimony of damages sustained in a construction contract as a result of extra work performed at the direction of the owner or the owner's agent when the written contract between them states that all changes must be in writing?

*583 Facts

On January 19, 1984, Eastline Corporation, a general contractor, entered into a contract with Marion Apartments, Ltd., a partnership, for the construction of a five-building forty-unit apartment complex in Columbia, MS. The project was financed by Farmers' Home Administration, and the contract was a standard FmHA form. The contract price was $955,570.
Eastline agreed to complete construction within 212 days after April 26, 1984, thus establishing a completion deadline of November 24, 1984. Eastline additionally agreed to pay liquidated damages of $351.00 per day of delay beyond the completion deadline. Finally Eastline agreed to the following clauses regarding additional or extra work:
I. CHANGES IN WORK.  The owner may at any time, with the approval of the official designated by the Farmers Home Administration (hereinafter called the Representative), make changes in the drawings and specifications, within the general scope thereof. If such changes cause an increase or decrease in the amount due under this contract or in the time required for its performance, an equitable adjustment will be made, and this contract will be modified accordingly by a "Contract Change Order". No charge for any extra work or material will be allowed unless the same has been ordered on such contract change order by the Owner with the approval of the Representative, and the price therefor stated in the order.
* * * * * *
VI. NOTICES AND APPROVAL IN WRITING.  Any notice, consent, or other act to be given or done hereunder will be valid only if in writing.
The construction project was hampered by several delays. The completion deadline was extended at least twice with final performance apparently due by July 24, 1985. The project architect finally certified construction as substantially complete on September 23, 1985.
Eastline blamed the delay on four main difficulties. First, the property boundaries indicated on the plans provided by Marion did not conform to the actual boundaries of the construction site. Second, the topographical survey provided by Marion did not conform to the actual topography of the construction site. Third, Marion's plans called for the use of two existing 24-inch drainage culverts, but it was later discovered that municipal regulations would require the installation of new 30-inch culverts. Fourth, Marion's plans indicated that an old water tower on the property would be removed prior to construction; it was not, and after waiting for Marion to remove the tower, Eastline finally removed the tower on its own.
According to Eastline, each of these problems compounded the others. For example, Eastline realized early in the project that the topography was not as anticipated,[2] but no fill dirt to correct the topography could be brought in until the old water tower was removed. The topographical correction was delayed first by boundary line problems and second by the culvert replacement problem. Only after all of these difficulties were discovered and remedied could the topography be brought to specification and the site made ready for building.
Eastline incurred substantial additional expense in making these corrections, particularly in installing the new culverts and in correcting the topography. For instance, Marion's plans specified that 500 yards of fill dirt would be required; the topographical plans were so inaccurate that eventually 10,000 yards of fill dirt were required to bring the site to grade.
On the date of completion, September 23, 1985, Marion still owed Eastline some $119,000 of the original contract price. Additionally, Eastline insisted that Marion owed $115,000 for extra expenses incurred because of the unanticipated construction problems. On October 21, 1985, Eastline brought suit in the Chancery Court of Rankin *584 County to recover these amounts. The case was twice continued and finally came for trial on February 23, 1987.
Eastline's president, vice president and construction superintendent testified at trial in appellant's case in chief and related the facts as set forth above. Eastline then called its accountant, who had prepared an itemized list of extra expenses incurred by Eastline as a result of the unexpected problems it encountered. However, the chancellor refused to admit any evidence of additional expense because Eastline had not complied with the "CHANGES IN WORK" clause (supra) by obtaining written change orders before proceeding with work not specified in the plans or contract.
Although the record seems to indicate that Eastline did request change orders from Marion for the additional work, Eastline's officers conceded that the additional work was performed before the change orders were actually obtained. They explained that Eastline was under pressure, particularly from FmHA, to get the job finished and that to avoid any further delay caused by processing the change order requests, Eastline went ahead with the additional work before receiving final authorization. Eastline's vice president testified that he orally informed Marion's representatives about the need for additional work and that they replied, "Get the project done. Get it done. We'll take care of it later." Eastline's president testified similarly.
The chancellor held that, notwithstanding these oral representations, the contract clearly and unambiguously required Eastline to obtain a written change order and that if Eastline performed extra or additional work without the authority of a change order, "they did it at their peril." Accordingly, the chancellor refused to allow the accountant's testimony regarding expenses incurred in the performance of the extra or additional work.

Issue
It is not contradicted that the contract in this case provided that its terms could be modified only by written expression of the parties. Obviously, the chancellor and appellee have overlooked or ignored the rule that a written contract can be orally modified. St. Louis Fire & Marine Ins. Co. v. Lewis, 230 So.2d 580 (Miss. 1970); Commercial Credit Corp. v. Long, 225 Miss. 164, 82 So.2d 847 (1955); Pritchard v. Hall, 175 Miss. 588, 167 So. 629 (1936); McDonnell Constr. Co. v. Delta & Pine Land Co., 163 Miss. 646, 141 So. 757 (1932); 15 Williston Law of Contracts § 1828, p. 493 (3d ed. 1961). An oral modification may be made even where the contract provides that modification must be in writing. City of Mound Bayou v. Roy Collins Constr., 499 So.2d 1354 (Miss. 1986); New York Life Ins. v. O'Dom, 100 Miss. 219, 56 So. 379 (1911); Baum v. Covert, 62 Miss. 113 (1884); 15 Williston Id., at 496. Therefore, the chancellor erred in holding that the written contract could not be orally modified, i.e., "they did it at their peril."
The question remaining is whether or not the parties waived the stipulation that all modifications be in writing. This question must be determined upon the facts and upon the parties' "pattern of conduct." In City of Mound Bayou, supra, it was held that the contractor was entitled to compensation for additional work, even though it failed to secure written modification as required by the contract, since the contractor performed the additional work in good faith and the City had not acted in good faith when it requested such additional work. 13 Am.Jur.2d Building and Construction Contracts § 24, p. 27 (1964), states the following:
Among the acts or conduct amounting to waiver are the owner's knowledge of, agreement to, or acquiescence in such extra work, a course of dealing which repeatedly disregards such stipulation, and a promise to pay for extra work, orally requested by the owner and performed in reliance on that promise.
The above principle stated in Am.Jur. has been approved in other jurisdictions. See Huang International, Inc. v. Foose Constr. Co., 734 P.2d 975 (Wyo. 1987); Moore Constr. Co. v. Clarksville Dept. of *585 Electricity, 707 S.W.2d 1 (Tenn. App. 1985); Udevco, Inc. v. Wagner, 100 Nev. 185, 678 P.2d 679 (1984); D.M. Holden, Inc. v. Contractor's Crane Service, Inc., 121 N.H. 831, 435 A.2d 529 (1981); Shreves v. D.R. Anderson Constructors, Inc., 206 Neb. 433, 293 N.W.2d 106 (1980); Obray v. Mitchell, 98 Idaho 533, 567 P.2d 1284 (1977); Charles Burton Builders, Inc. v. L & S Constr. Co., Inc., 260 Md. 66, 271 A.2d 534 (1970); Hetherington Letter Co. v. O.F. Paulson Constr. Co., 171 N.W.2d 264 (Iowa 1969); Hi-Valley Constructors, Inc. v. Heyser, 163 Colo. 1, 428 P.2d 354 (1967); Honolulu Roofing Co., Ltd. v. Felix, 49 Hawaii 578, 426 P.2d 298 (1967); Willey v. Terry & Wright of Kentucky, Inc., 421 S.W.2d 362 (Ky. 1967); American Sheet Metal Works, Inc. v. Haynes, 67 Wash.2d 153, 407 P.2d 429 (1965); Childress v. C.W. Myers Trading Post, Inc., 247 N.C. 150, 100 S.E.2d 391 (1957); Bailey v. Norton, 178 Kan. 104, 283 P.2d 400 (1955).
The evidence in the case sub judice appears to support that Eastline acted in good faith when it proceeded with additional work without obtaining the necessary change orders; that Marion had knowledge of Eastline's performance of additional work; that Marion promised to pay for the additional work and Eastline obtained this assurance before proceeding; and that Marion's acquiescence in the additional work is evidenced by its agent's signature on the certificate of substantial completion.[3]
When a plaintiff shows breach of the contract, damages may also be shown. See 11 Williston, The Law of Contracts §§ 1338, 1363, pp. 197-203, 340-48 (3d ed. 1961); 3 Restatement (Second) Contracts § 346, p. 110 (1981); 17A C.J.S. Contracts § 601, p. 1173 (1964). Appellant Eastline made a showing of breach and the lower court erred in refusing it the right to show damages, which was the next step.
Because of the error committed by the chancellor, the cause is reversed and remanded for a full trial on the merits, consistent with this opinion.
REVERSED AND REMANDED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] Dwayne Sharp was dismissed from the suit prior to trial.
[2] Eastline's president testified that he noticed variance between the actual topography of the site and that shown by the plans before the contract with Marion was made.
[3] Marion had not yet presented any evidence when the trial below was interrupted by this interlocutory appeal. It may be able to rebut all that had been established by Eastline. Until Marion presents its evidence, the final determination of waiver cannot be made, since waiver is a question of fact Green v. Pendergraft, 253 Miss. 891, 179 So.2d 831 (1965).