# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00904-COA

**KANZA CONSTRUCTION, INC.**                                        **APPELLANT**

**v.**

**KANSAS CITY SOUTHERN RAILWAYS**                          **APPELLEE**
**COMPANY**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/01/2019 |
| TRIAL JUDGES: | HON. ISADORE W. PATRICK JR. |
| | HON. TONI DEMETRESSE TERRETT |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | STEVEN CRAIG PANTER |
| ATTORNEYS FOR APPELLEE: | CHARLES EDWIN ROSS |
| | JAMES EARL GRAVES III |
| | LINDA FAYE COOPER |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 02/22/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.    Kansas City Southern Railway Company (KCS) contracted with Kanza Construction Inc. to demolish and replace a bridge on Washington Street in Vicksburg.  Kanza did not complete the project on time, and the new bridge had numerous defects.  KCS had to hire another contractor to complete the bridge, and KCS refused to make payments to Kanza that Kanza claimed were due under the parties' contract.  Kanza sued for breach of contract, and KCS filed a counterclaim for breach of contract.

¶2.    Prior to trial, the trial judge granted partial summary judgment in favor of KCS, ruling

that KCS was entitled to judgment as a matter of law on Kanza's claim for "acceleration damages." After a bench trial, the trial judge found that Kanza's work was defective, that KCS had to hire another contractor to finish the project, and that Kanza had materially breached the parties' contract. The trial judge entered a final judgment in favor of KCS and awarded damages of $3,476,544.83. Kanza does not appeal or contest the findings or damages awarded in the final judgment.[1] Rather, Kanza argues that the trial judge erred by granting KCS's pretrial motion for partial summary judgment on Kanza's claim for "acceleration damages."

¶3. We conclude that the trial judge's finding that Kanza materially breached the parties' contract—a finding that Kanza does not challenge on appeal—defeats Kanza's claim for acceleration damages. Therefore, even if the trial judge erred by granting partial summary judgment prior to trial, the claim for acceleration damages fails based on the unchallenged findings in the final judgment. Accordingly, any error in the pretrial ruling was harmless, and we affirm in full the final judgment in favor of KCS.

## FACTS AND PROCEDURAL HISTORY

¶4. The Washington Street Bridge in Vicksburg passes over two parallel railroad tracks operated by KCS. In 2009, the City of Vicksburg closed the bridge due to safety concerns and discussed repairs to the bridge with KCS. The City contracted with KCS to demolish the old bridge, construct a new bridge, and build retaining walls around the tunnel under the

---

[1] Kanza's surety, Hanover Insurance Company, was a party in the trial court, and the final judgment held Kanza and Hanover jointly and severally liable for the judgment. Hanover paid the full amount of the judgment and is not a party on appeal.

2

bridge. KCS then accepted bids from contractors to perform the demolition and construction. KCS accepted Kanza's bid to perform the work for a lump sum of $6,796,000, which was the amount that KCS received from the City for the project. KCS and Kanza then entered into a contract, referred to as the Master Agreement (hereinafter, "the Agreement"), that incorporated the City's engineer's design plans for the bridge and retaining walls. Kanza had inspected the design plans and the property prior to submitting its bid.

¶5. Kanza was given notice to proceed on June 10, 2010. The Agreement required Kanza to complete the project by June 10, 2011. Although the Agreement incorporated design plans for the bridge and retaining walls, Kanza had discretion to make changes to the plans as long as the changes were sound from an engineering standpoint and would not delay completion of the project beyond its deadline. Kanza changed the design of the retaining walls, which resulted in significant delays. Actual construction did not begin until April 2011, only three months before the deadline. On May 20, 2011, Kanza requested an extension, and KCS and the City agreed to extend the deadline to September 30, 2011. However, additional problems arose, and the deadline was extended again to December 3, 2011.

¶6. On September 1, 2011, KCS's senior vice president and chief engineer, John Jacobsen, sent Kanza's president, Steve Hutchinson, a letter regarding the delays and extensions. Jacobsen insisted that Kanza add manpower and equipment in order to meet the extended deadline of December 3. Jacobsen cited a provision of the Agreement that stated:

> If in the opinion of [KCS], [Kanza] falls behind schedule at any time, [Kanza] will add additional manpower and equipment immediately and keep them on the job until the work is back on schedule without any additional cost to [KCS]. If overtime work is required to maintain the schedule, [Kanza] will

3

direct its work force to do so without any additional cost to [KCS].

¶7.     Hutchinson responded by letter on September 7.  He denied that Kanza was behind schedule and asserted that Kanza was entitled to additional time for delays that were not Kanza's fault.  Hutchinson argued that taking those delays into account, a new deadline of March 13, 2012, would be appropriate.  He stated that Kanza was willing to add manpower and equipment and complete the project by December 2011, as requested by KCS.  However, he stated that this would be an "Acceleration of the Project" and that Kanza would be "entitled to compensation for the acceleration effort."

¶8.     Hutchinson subsequently met with Jacobsen and KCS's assistant general counsel, David Reeves.  The parties apparently agreed to a new completion schedule and a new deadline of February 28, 2012.  In an affidavit, Hutchinson claimed that after the meeting, "Reeves took [him] aside and requested that Kanza proceed with the acceleration without a prior change order."  Hutchinson claimed that Reeves said that an approved change order would be provided at a later time.  Hutchinson understood Reeves's statements to mean that "Kanza would be paid for its additional costs associated with the acceleration."  Hutchinson stated that Kanza agreed to accelerate construction on that basis.

¶9.     Kanza tendered the bridge to KCS by the February deadline, but KCS later identified several defects in Kanza's work.  The defects required KCS to hire additional engineers to evaluate the work and then hire a new contractor to repair and finish the project.  Based on the defects in Kanza's work, KCS refused to pay Kanza the remainder of the lump sum specified in the Agreement.  KCS also refused to pay Kanza's claimed "acceleration" costs.

4

¶10. Kanza filed a complaint against KCS for breach of contract and damages, including the remainder of the lump sum specified in the Agreement, KCS's alleged acceleration costs, and other alleged extra-contractual damages. KCS answered, denied that it had breached the Agreement, and asserted a counterclaim for breach of contract. KCS sought damages for the costs it had incurred to repair and complete the defective bridge and retaining walls.

¶11. KCS subsequently filed a motion for partial summary judgment addressing Kanza's claim for acceleration damages. KCS argued that Kanza was not entitled to acceleration damages because Kanza never accelerated the project; because Kanza was actually seeking delay damages, which the Agreement prohibited; and because Kanza's alleged damages were too speculative. In response, Kanza relied on Hutchinson's affidavit, which is discussed above. Kanza argued that there was a genuine issue of material fact regarding whether KCS, through Reeves, told Hutchinson that Kanza's acceleration costs would be accepted and paid. The trial judge granted partial summary judgment, ruling that KCS was entitled to judgment as a matter of law on Kanza's claim for acceleration damages.

¶12. The remaining issues proceeded to a bench trial.[2] After trial, the judge entered judgment in favor of KCS.[3] He found that although Kanza had discretion under the

---

[2] The Agreement included a jury trial waiver.

[3] Judge Isadore Patrick granted KCS's pretrial motion for partial summary judgment, presided over the trial, made findings of fact and conclusions of law, and entered judgment in favor of KCS. Judge Patrick retired after the judgment was entered. Judge Toni Walker Terrett ruled on all post-trial motions. Judge Terrett amended the judgment only to grant Kanza and its surety, Hanover, a credit for certain retained funds that were released to KCS and to clarify that Kanza and Hanover were jointly and severally liable for the judgment. Judge Terrett denied all other post-trial motions.

Agreement to make design changes, Kanza's changes to the design of the retaining walls resulted in significant delays, which in turn required multiple extensions of the Agreement's deadline. In addition, the judge found that Kanza did not complete work on the bridge until February 2012 and that Kanza's work was defective. Specifically, the retaining walls were defective and contained "blow outs" that eventually would have caused Washington Street to cave in. The blow outs were caused by water that was seeping into the retaining walls as a result of defects in the construction. This required KCS to hire a new contractor to repair and finish the project. The judge also found that Kanza breached the Agreement by its defective work. The judge awarded KCS damages of $3,476,544.83 for the additional costs that KCS incurred to repair and finish the project.

¶13.    The trial judge denied Kanza's remaining claims for damages, finding that most failed because Kanza failed to obtain approval of change orders prior to performing the alleged work as required by the Agreement. Hutchinson admitted that Kanza did not submit change orders as required by the Agreement. He testified that he did not submit change orders prior to performing additional work because in prior dealings KCS had paid Kanza for such work without prior change orders. However, as the trial judge noted, Kanza provided no evidence to corroborate Hutchinson's claims, and KCS's director of track projects testified that preapproval of change orders had been required under all contracts with Kanza.

¶14.    Kanza filed a notice of appeal. On appeal, Kanza raises one issue: whether the trial judge erred by granting partial summary judgment on Kanza's claim for acceleration damages. For the reasons discussed below, we affirm.

## ANALYSIS

¶15.    Kanza argues that the trial judge erred by granting partial summary judgment on the issue of acceleration damages because there was a genuine issue of material fact, namely, whether a conversation between Hutchinson and Reeves resulted in an oral modification of the Agreement with KCS.  In response, KCS argues that the alleged conversation could not modify the Agreement because Reeves did not have authority to do so and because the Agreement could not be orally modified.[4]

¶16.    Kanza's argument relies heavily on *Eastline Corp. v. Marion Apartments Ltd.*, 524 So. 2d 582 (Miss. 1988), which held that a construction contract could be "orally modified" even though it expressly "provided that its terms could be modified only by written expression of the parties." *Id.* at 584.  In that case, the plaintiff (Eastline) contracted to build an apartment complex for the defendant (Marion). *Id.* at 583.  The contract provided that no charge for extra work would be paid unless Marion approved the work in a written change order before the work was performed. *Id.*  Eastline claimed that various problems arose during construction that required additional work and that it was under pressure from a federal agency to finish the job without delay. *Id.* at 584.  Eastline alleged that it performed the additional work without obtaining prior change orders based on Marion's assurances that Marion would "take care of it later." *Id.*

¶17.    On appeal, the Supreme Court held that parties may orally modify a contract that expressly forbids oral modification if the parties engage in a "pattern of conduct" that

---

[4] Section 22 of the Agreement provides, "This Agreement may not be amended or modified except in writing signed by an authorized representative of each party."

7

"waive[s] the stipulation that all modifications be in writing." *Id.* The Court held that Eastline was entitled to a trial on that issue based on evidence "that Eastline acted in good faith when it proceeded with additional work without obtaining the necessary change orders; that Marion had knowledge of Eastline's performance of additional work; that Marion promised to pay for the additional work and Eastline obtained this assurance before proceeding; and that Marion's acquiescence in the additional work [was] evidenced by its agent's signature on the certificate of substantial completion." *Id.*

¶18.   KCS argues that *Eastline* is distinguishable for various reasons and that Reeves's alleged assurances are irrelevant because Reeves lacked authority to orally modify the Agreement. In contrast, Kanza argues that *Eastline* is on all fours and that Reeves's authority was an issue for trial. However, we conclude that the circuit court's judgment should be affirmed on alternative grounds.

¶19.   As discussed above, the trial judge found, following a trial on the merits, that Kanza had breached the agreement by failing to finish the project and by constructing the bridge and retaining walls in a defective condition that eventually would have caused Washington Street to cave in. The judge also found that KCS had sustained damages of $3,476,544.83 as a result of Kanza's breach. This was the amount that KCS had to pay a new contractor to repair Kanza's defective work and finish the project. On appeal, Kanza does not challenge these findings or any other aspect of the final judgment entered after the trial.

¶20.   "A party who has breached a contract may not . . . maintain a suit for breach of contract against the other party." *Snow Lake Shores Prop. Owners Corp. v. Smith*, 610 So.

8

2d 357, 361 (Miss. 1992); *see also Brent v. Corbin*, 252 Miss. 464, 471, 173 So. 2d 430, 433 (1965) ("A party to a contract who is himself in default cannot maintain a suit for its breach."). In addition, "[i]t is well established that a party's material breach of a bilateral contract excuses further performance by the other party." *Favre Prop. Mgmt. LLC v. Cinque Bambini*, 863 So. 2d 1037, 1044 (¶20) (Miss. Ct. App. 2004). "A breach is material when there is a failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach as substantially defeats its purpose, or when the breach of the contract is such that upon a reasonable construction of the contract, it is shown that the parties considered the breach as vital to the existence of the contract." *UHS-Qualicare Inc. v. Gulf Coast Cmty. Hosp. Inc.* 525 So. 2d 746, 756 (Miss. 1987) (citations and quotation marks omitted).

¶21.   The parties' Agreement also makes clear that Kanza's material breach of the Agreement excuses KCS's obligation to make further payments. Section 2(E) of the Agreement states, "[KCS] is not obligated to make any payment under this Agreement if Kanza materially breaches this Agreement until Kanza has cured or [KCS] has waived the breach in accordance with this Agreement." Kanza did not cure the breaches at issue in this case; rather, KCS had to hire a new contractor to repair Kanza's defective work and finish the project. Nor did KCS waive the breach.

¶22.   The breach found by the trial judge qualifies as "material" under any definition of the term. Kanza failed to complete the project and constructed the bridge and retaining walls in such a defective condition that KCS had to hire a new contractor to redo Kanza's work and

9

finish the project. KCS had to pay the new contractor $3,476,544.83—more than half the contract price of the project—to repair defects that eventually would have caused Washington Street to cave in. Given the trial judge's unchallenged findings on these issues, Kanza's claim for acceleration damages is nothing more than a demand that it be paid for defective work that had to be redone at a substantial cost to KCS. Such a recovery is barred under both Mississippi law and the parties' Agreement.

¶23. Because Kanza has not challenged the trial judge's finding that it materially breached the Agreement, we must regard that fact as finally and conclusively determined. Kanza's material breach bars its claim for acceleration of damages. Accordingly, any error by the trial judge's pretrial grant of partial summary judgment is harmless. *See* M.R.C.P. 61.

¶24. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**

10