# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-01300-SCT

*KEN ROGERS*

*v.*

*ESTATE OF COSTAS PAVLOU*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/05/2020 |
| TRIAL JUDGE: | HON. DAVID ANTHONY CHANDLER |
| TRIAL COURT ATTORNEYS: | CHRISTOPHER JACKSON WELDY |
| | JUDSON MORGAN LEE |
| | CYNTHIA HEWES SPEETJENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER JACKSON WELDY |
| ATTORNEYS FOR APPELLEE: | JUDSON MORGAN LEE |
| | CYNTHIA HEWES SPEETJENS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 10/14/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., COLEMAN AND BEAM, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     Ken Rogers and Costas Pavlou entered into an ill-fated agreement for Rogers to potentially purchase a concession stand from Pavlou.  Before the Court is Rogers's appeal of a county court judge's order granting a directed verdict in favor of Costas Pavlou's estate. We affirm.

## Facts

¶2.     On September 30, 2009, Rogers and Pavlou entered into a joint venture agreement to operate a concession business, Costas Place, at the Mississippi State Fair.  The agreement required Rogers to pay Pavlou $35,000 "on or before October 25, 2009."  If that condition was satisfied, Pavlou would give Rogers the option to purchase Costas Place for an additional $35,000 payment "on or before two weeks after the last day of the Mississippi State Fair in the year 2011."

¶3.     Rogers failed to pay the first $35,000 by the deadline; he first made a payment of $30,225 on November 23, 2009, which Pavlou accepted. Then, from 2009 to 2011, Pavlou paid Rogers an equal share of the net income from Costas Place per the agreement. Nevertheless, all that remained was for Rogers to provide the final $35,000 payment in 2011, but the deadline passed.

¶4.     Rogers contends that Pavlou waived the 2011 deadline.  Rogers asserts that during his divorce proceeding, Pavlou represented to Rogers that he would extend the deadline for the option to purchase the business until after the divorce proceedings ended.  Pavlou countered that, pursuant to the contract, Rogers's option to purchase the business lapsed when he failed to pay the remaining $35,000.  The agreement provided, in pertinent part, as follows:

> In the event Rogers does **not** exercise his option to purchase 'Costas Place' prior to two (2) weeks following the 2011 Mississippi State Fair by payment of the $35,000.00 on or before such time, this Agreement shall become void and all income, including the initial $35,000.00 payment to Pavlou, each party has received prior to that time shall remain each such party's property and this Agreement shall be then void.

2

¶5. On November 8, 2012, Rogers filed suit against Pavlou, asserting breach of contract, in the County Court of the First Judicial District of Hinds County. Including his claims of waiver, Rogers insisted that Pavlou gave reassurances that he would accept that second installment of $35,000 after Rogers's divorce was final. The case proceeded to trial, but, in the meantime, Pavlou died, and his estate was substituted as party-defendant. After discovery and litigation but before trial, Pavlou's estate filed two pretrial motions, a motion to take judicial notice of prior testimony and a motion to exclude parol evidence.

¶6. On June 24, 2019, the trial judge conducted a hearing on the motions. First, the court considered the motion to take judicial notice. Pavlou's estate sought to introduce Rogers's testimony at his divorce proceeding. There, Rogers was questioned about the joint venture agreement with Pavlou. Pavlou's counsel asked the trial judge to "take judicial notice that he testified [the joint venture agreement] was void, that he swore to the Chancery Court it was void."

¶7. After hearing the parties' arguments and relevant, prior testimony on the matter, the trial judge found as follows:

> Based on the testimony read and facts, this Court is of the opinion that it is well settled that matters of record and ancillary court proceedings may be taken by judicial notice, and the Court believes that such is this case. The defendant's motion for judicial notice of those facts is hereby granted. So ordered.

¶8. On the motion to exclude parole evidence, Pavlou's counsel argued the 2009 agreement "very specifically and expressly said that modifications had to be in writing, that there would be no verbal alterations to the contract." Pavlou's counsel continued by stating

3

that "[Rogers] contend[s] that Mr. Pavlou told Mr. Rogers in October of 2011, went to Mr. Rogers and said, 'Don't worry about paying the second installment that's due this month. You can just pay me after your divorce is finalized. '" Pavlou's counsel read the contract into the record. As so recorded, it provided: "Any notice given to either party desiring to amend, alter, or cancel this agreement shall be in writing at the address shown below, and there can be no verbal alterations or cancellations hereof."

¶9.    Rogers's counsel asserted that because Pavlou waived the provision concerning the initial payment, Pavlou waived the provision regarding oral alterations. In the end, the trial judge granted Pavlou's motion to exclude parole evidence, finding,

> contract law is very plain that the four corners of the document represent the agreement and that in this case the agreement was specific to any modifications to be made. They must have been made in writing. The Court finds that there is no convincing evidence to change the Court's opinion of the simplicity of understanding that argument regarding the contract. Therefore, [Pavlou's] motion in limine to exclude [Rogers]'s use of the parole evidence is hereby granted. So ordered.

¶10.    In addition, the trial judge also considered Rogers's motion to exclude witnesses. Rogers sought to exclude two witnesses from testifying on behalf of Pavlou: Angela Fortado and Melissa McElroy. But the trial judge denied Rogers's motion because the witnesses had been disclosed four years before.

¶11.    At trial in June 2019, Rogers called six witnesses, including himself. The first witnesses that Rogers called were the two he tried having excluded: Angela Fortado and Melissa McElroy. The two witnesses did not discuss Rogers's issue surrounding the October 25, 2009, deadline waiver; they spoke only about the relationship between Pavlou and

4

Rogers. The next witnesses were only questioned about their relationship to the previous witnesses and their relationships with Pavlou. No witness but Rogers himself testified about waiver. After the parties argued their cases, introducing evidence and examining witnesses, Pavlou's counsel moved for a directed verdict. In the motion, Pavlou argued that Rogers's claim was really one for oral modification and, even if he was claiming that Pavlou waived the payment deadline, Rogers had failed to present competent proof that Pavlou waived the payment deadline. The trial judge granted the motion. Rogers appeals.

**Standard of Review**

¶12. "A directed verdict exists so a defendant may challenge a case unsupported by sufficient evidence." *Forbes v. Gen. Motors Corp.*, 935 So. 2d 869, 878 (¶ 15) (Miss. 2006) (quoting Miss. R. Civ. P. 50(a)). The Court's standard of review for a directed verdict is de novo. *Id.* at 873 (¶ 3) (stating "Th[e] Court conducts a de novo review of motions for directed verdict . . . ." (internal quotation mark omitted) (quoting *Entergy Miss., Inc. v. Bolden*, 854 So. 2d 1051, 1055 (¶ 7) (Miss. 2003))). "If the Court finds that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom presents question for the jury, the motion should not be granted." *Id.* (internal quotation mark omitted) (quoting *Bolden*, 854 So. 2d at 1055 (¶ 7)). However, the Court "has held that a trial court should submit an issue to the jury only if the evidence creates a question of fact concerning which reasonable jurors could disagree." *Id.* (internal quotation mark omitted) (quoting *Bolden*, 854 So. 2d at 1055 (¶ 7)).

5

¶13. Thus, here, we consider evidence de novo and in the light most favorable to Rogers, giving him the benefit of all favorable inferences that may be reasonably drawn from the evidence:

> In doing so in this case, if we find the facts so considered point so overwhelmingly in favor of [the movant] that reasonable jurors could not have arrived at a contrary verdict, and there is thus no question for the jury, we are required to affirm the trial court's ruling. Conversely, if we find that there is substantial evidence of such quality and weight that reasonable, fair-minded and impartial jurors could have differed on the matter, and that the trial court should have submitted the issue to the jury, then we must reverse and remand.

*Id.* (¶ 4).

### Discussion

¶14. Here, Rogers argues that the trial judge did not consider the facts and evidence presented in the light most favorable to him, the nonmoving party. At trial, Rogers argued that Pavlou waived the October 2011 deadline by his prior actions: he waived the October 2009 deadline and told Rogers that "he was not ready to sell" the business. Rogers argues on appeal that he provided enough testimony and evidence at the close of his case-in-chief to show a legally sufficient evidentiary basis for a reasonable jury to reach a different conclusion.

¶15. At trial, Rogers's case-in-chief surrounded Pavlou's alleged waiver of the October 2011 payment deadline. The Court has long held that "a party to a contract may by words or conduct waive a right to which he would otherwise have been entitled." *Hobson v. Chase Home Fin., LLC*, 179 So. 3d 1026, 1035 (¶ 28) (Miss. 2015) (internal quotation mark

6

omitted) (quoting *Canizaro v. Mobile Comm. Corp. of Am.*, 655 So. 2d 25, 29 (Miss. 1995)). Further,

> Among the acts or conduct amounting to a waiver are the owner's knowledge of, agreement to, or acquiescence in such extra work, a course of dealing which repeatedly disregards such stipulation, and a promise to pay for extra work, orally requested by the owner and performed in reliance on that promise.

*Scott Addison Constr., Inc. v. Lauderdale Cnty. Sch. Sys.*, 789 So. 2d 771, 775-76 (¶ 15) (Miss. 2001) (quoting *Eastline Corp. v. Marion Apartments, Ltd.*, 524 So. 2d 582 (Miss. 1988)). At issue is whether Rogers presented sufficient evidence during his case-in-chief to make a prima facie showing that Pavlou waived the October 2011 deadline. We agree with the trial judge that he did not.

¶16. The cases discussing waiver primarily discuss one party's waiver of a breach by the other. *See, e.g.*, *Tower Underwriters v. Culley*, 211 Miss. 788, 53 So. 2d 94, 96-97 (1951); *see also Tupelo Redevelopment Agency v. Gray Corp., Inc.*, 972 So. 2d 495, 507 (¶ 30) (Miss. 2007); *Sanderson Farms, Inc. v. Gatlin*, 848 So. 2d 828, 837 (¶ 23) (Miss. 2003). Here, Pavlou's estate contends—and we agree—that Pavlou had no right to receive the October 2011 payment. Rogers's failure to make the 2011 payment was not a breach; he simply declined his option to purchase the stand. However, we have held that waiver applies in the context of conditions precedent to options to lease real property. *Vice v. Leigh*, 670 So. 2d 6, 11 (Miss. 1995), and the Court has acknowledged that, in general, conditions precedent may be waived. *Pike v. Howell Building Supply Co., Inc.*, 748 So. 2d 710, 713 (¶ 7) (Miss. 1999) (quoting *Mariana v. Hennington*, 229 Miss. 212, 90 So. 2d 356, 362

7

(1956)). Accordingly, we turn to the issue of whether Rogers presented sufficient competent evidence that Pavlou waived the October 2011 deadline.

¶17. Rogers asserts that Pavlou's statement that "he was not ready to sell" constituted an act that would suffice to prove waiver. Under the above-described standard of review for a motion for directed verdict, we must assume that Pavlou indeed told Rogers he was not ready to sell the business. However, even assuming Pavlou said it, the statement does not amount to "clear and unequivocal" evidence that Pavlou intended to waive the deadline for Rogers to exercise his option. *Tower Underwriters, Inc. v. Culley*, 211 Miss. 788, 53 So. 2d 94, 96. (Miss.1951).

¶18. Rogers also contends that Pavlou's decision to wait until July 16, 2012, to send the letter informing Rogers that he had missed the deadline constituted conduct amounting to waiver. However, it must be remembered that Rogers held an option to purchase the business if he made payment to Pavlou by October 2009. The option expired pursuant to its own terms without any action required of Pavlou. Even taking all evidence in the light most favorable to Rogers, that Pavlou waited months to send a letter indicating that the deal was void hardly amounts to clear and unequivocal evidence of waiver. Once Rogers purchased the option to buy Costas Place, Pavlou's intent to sell or not to sell the business did not matter.

¶19. Rogers further relies on evidence showing that Pavlou agreed to accept an earlier 2009 payment after its deadline had passed. "[T]he waiving party must have 'full knowledge of a right existing,' and there must be 'an intentional surrender or relinquishment of that right.'"

8

*Martin v. Williams*, 172 So. 3d 782, 787 (¶ 12) (Miss. Ct. App. 2013) (quoting *Taranto Amusement Co. v. Mitchell Assocs.*, 820 So. 2d 726, 729 (¶ 13) (Miss. Ct. App. 2002)). The fact that Pavlou accepted Rogers's 2009 payment late does not indicate that Pavlou intentionally waived the right to timely receive the final payment.

¶20.   Simply put, Pavlou's acceptance of the 2009 payment beyond the deadline, Pavlou's statement that he "was not ready to sell," and the July 2012 letter stating that the contract was "now void" do not suffice as evidence of Pavlou's clear and unequivocal intent to waive the October 2011 deadline. Therefore, considering the evidence in the light most favorable to Rogers, no question of fact remains for determination by a jury.

¶21.   **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**